# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

JAMES MARCUS CARR and wife, )
MARY GENE CAMPBELL CARR,)
            )
    Petitioners/Appellants,    )
            )
v.              )
            )
JOHNNY ALLEN MOORE,    )
            )
    Respondent/Appellee.    )
            )

Appeal No.
01A01-9807-CH-00402

Sumner County Chancery
No. 97-A15

**FILED**

July 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS E. GRAY, PRESIDING

LESLIE B. MCWILLIAMS
SUITE 3900 6100 BUILDING
CHATTANOOGA, TENNESSEE 37411

ATTORNEY FOR PETITIONERS/APPELLANTS

CAROL ANN BARRON
264 THIRD AVENUE
DAYTON, TENNESSEE

ATTORNEY FOR RESPONDENT/APPELLEE

**AFFIRMED AND REMANDED**

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, J.
CAIN, J.

# OPINION

James Marcus Carr and his wife Mary Gene Campbell Carr ("Appellants") commenced the underlying action by filing a petition for adoption of the latter's minor child, M.C.M. The petition, which alleged that James Marcus Carr acquired custody of the child upon his marriage to M.C.M.'s mother, sought to terminate the parental rights of M.C.M.'s father, Johnny Allen Moore ("Appellee"). The trial court initially terminated Mr. Moore's parental rights pursuant to Tenn. Code Ann. § 36-1-102 for failure to pay child support for more than four months immediately preceding the filing of the petition for adoption. However, after considering Mr. Moore's motion to alter or amend the judgment, the trial court retracted that decision and rejected Appellants' petition. Appellants appeal the trial court's refusal to terminate Appellee's parental rights, asserting two errors. For the following reasons, we affirm.

Johnny Allen Moore and Mary Gene Campbell Carr are the biological parents of M.C.M. At the time of M.C.M.'s birth in 1992, they were married and residing together. After several acrimonious separations, they divorced in 1994 in Hamilton County, Tennessee. The initial divorce decree granted Mrs. Carr primary custody and ordered Mr. Moore to pay $250 per month in child support. However, on July 24, 1995, the trial court ordered Mr. Moore to pay weekly child support of $64 plus a 5% clerk's fee to be automatically deducted from his wages by his employer. The court also ordered Mr. Moore to pay directly to Mrs. Carr $547.71 in arrearages at the rate of $5 per week.

When Appellants married in 1996, Mrs. Carr and M.C.M. moved to the Nashville area. Shortly thereafter, Mrs. Carr filed a motion in Hamilton County seeking modification of the existing court-ordered arrangements for picking up and delivering M.C.M. for visitation with Mr. Moore. Mr. Moore testified that he unsuccessfully requested Mrs. Carr's counsel to reschedule the hearing on the motion. After Mr. Moore failed to attend the May 1996 hearing, the Hamilton County Circuit Court decreed that Mr. Moore would pick up and deliver M.C.M. for visitation at a gas station in Hendersonville, Tennessee, one and one half hours from Mr. Moore's Hamilton County residence, until a second hearing was held.

The Hamilton County Circuit Court held the second hearing in June

1996. Mr. Moore appeared *pro se* and attempted to explain that driving to Hendersonville for visitation presented an intolerable burden, forcing him to arrange child care for his three other children as his only vehicle had a single seat and lacked the proper restraints necessary to transport all his children simultaneously. Mr. Moore's argument resulted in an order terminating his visitation until he got "his mind straightened out."

After the issuance of that order, Mr. Moore's contact with M.C.M. decreased. He called M.C.M. in September, several times in November, and twice in December. When he requested visitation around Christmas, Mrs. Carr informed him that M.C.M. already had plans with her family.

In November 1996, Mr. Moore was laid off from his job. The final $134.40 child support payment made through his employer was sent November 12. Mr. Moore testified that he did not mail the next support payment to Mrs. Carr because arrearage checks he sent her in October and November had been returned with the notation, "Return to Sender, Address Unknown." Instead, he began purchasing money orders for his son's child support and setting them aside rather than sending them to Mrs. Carr's previous address. At trial, Mrs. Carr admitted that she moved four times during 1996 and failed to provide Mr. Moore with forwarding addresses.

When Appellants filed the underlying petition for adoption in Sumner County Chancery Court on March 26, 1997, alleging that Mr. Moore willfully abandoned his son by failing to visit or pay child support, the Chancellor initially terminated Mr. Moore's parental rights and granted Mr. Carr's request to adopt M.C.M. The Chancellor premised this disposition on a finding that Mr. Moore had failed to support or make reasonable payments toward support of M.C.M. for four (4) consecutive months, thereby abandoning his son. The Chancellor declined to find that Mr. Moore willfully failed to visit his son when visitation had been terminated by the Hamilton County Circuit Court.

Mr. Moore moved to alter and amend the judgment, arguing that the Chancellor had miscalculated the time between his last payment and the date the petition was filed. Mr. Moore asserted that the petition was filed on March 26, 118 days after the child support was due and payable. He calculated the number of days in the statutory four (4) month period at 121.75.

The Chancellor granted Mr. Moore's motion and vacated the order of

adoption, finding that the four (4) month period had not expired. The Chancellor based this conclusion on findings that the gross amount of the child support Mr. Moore paid from September 1, 1995 to November 21, 1996 was $4,435.20 and the gross amount due from September 1, 1995 to November 30, 1996 was $4,368. The Chancellor reasoned that Mr. Moore's last child support payment on November 12, 1996, as applied, would have made the child support current through the first week of December, less than the statutorily mandated four (4) months.

## I.

Appellants argue that the Chancellor erred in reversing the decision to terminate Mr. Moore's parental rights. They argue that the statutory time period should be measured from November 12, the date of Mr. Moore's last child support payment.

Our review of the trial court's factual findings is *de novo* with a presumption of correctness unless a preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d). That deference is not applied to issues of law which receive plenary review. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Before termination of parental rights is permissible, the grounds therefor must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113 (c) (1) (Supp. 1998). In addition, the parental rights termination statute requires a finding that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113 (c) (2) (Supp. 1998). Abandonment is one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113 (g) (Supp. 1998). In this context, abandonment means:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102 (1) (A) (Supp. 1998).

The record shows that on July 24, 1995, the Hamilton County Circuit Court ordered Mr. Moore to make weekly child support payments of $67.20, which included a 5% clerk's fee. The gross amount of child support Mr. Moore paid from September 1, 1995 to November 12, 1996 was $4,435.20. The gross amount of child support due from September 1, 1995 to November 30, 1996 was $4,368. Mr. Moore's employer made a $403.20 payment on his behalf on July 8 and $268.80 payments on his behalf on August 1 and 28, and October 1 and 29. The final payment by the employer was for $134.40 on November 12. These figures indicate that according to the pattern previously adopted by the parties, Mr. Moore's child support payments were current through the first week of December, cutting short the requisite four (4) month time span calculated from March 26.

While Appellants may dispute the method used to calculate payments, it was their burden to establish by clear and convincing evidence that Mr. Moore failed to pay child support for the statutory period. *See State v. Defriece*, 937 S.W.2d 954, 961 (Tenn. App. 1996). "The clear and convincing standard imposes a heightened burden on those seeking to terminate the rights of a natural parent. To meet this standard, a party must go beyond the mere threshold of a preponderance of the evidence:

> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established.

*O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995) (citations omitted)." *Id.* We agree with the trial court that the Appellants failed to meet their burden.                                    II.

Appellants contend that the trial court erred in finding that Mr. Moore did not willfully fail to visit his son for four (4) months before the petition for adoption was filed. They maintain Mr. Moore could have returned to court at any time and requested the reinstatement of his visitation privileges.

Appellants bore the burden of establishing that Mr. Moore's failure to visit M.C.M. was willful by clear and convincing evidence. *See id.* In light of the Hamilton County Circuit Court's order terminating Mr. Moore's visitation rights, we cannot say the Chancellor erred in finding that Mr. Moore's failure to visit M.C.M. was not willful.

Accordingly, the Chancellor's refusal to terminate Johnny Allen Moore's parental rights and denial of Appellants' petition for adoption are affirmed and the case is remanded for such further proceedings as may arise. Costs on appeal are taxed to the Appellants, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL, PRESIDING JUDGE (M.S)


_____
WILLIAM B. CAIN, JUDGE